## JAMES COTTON *against* HARM JAN HUIDEKOPER.

### IN ERROR.

The words of a witness, contained in a deposition, must be construed according to the general understanding: they must not be used in their grammatical sense, but in common parlance: thus, "as deponent understood by said H." means "as deponent understood said H. to say."

It is not competent in an action for malicious prosecution, for the defendant to give in evidence the substance of what a number of witnesses swore before the magistrate who took the information, in order to establish probable cause.

If two or more join in a prosecution, without reasonable or probable cause, one and all are answerable in damages. It is joint and several.

One who participates voluntarily in such a prosecution, and it is carried on with his consent, countenance and approbation, is a partner in the transaction, and liable for the consequences.

A non-joinder of a participator, can only be taken advantage of, if at all, by plea in abatement.

WRIT of error to the Court of Common Pleas of *Crawford* county.

This was an action on the case, for a malicious prosecution, brought by *James Cotton* against *Harm Jan Huidekoper*. Plea, not guilty.

The plaintiff had been indicted in the Quarter Sessions of *Warren* county, for shooting at the defendant, with intent to kill him.

Many bills of exception were taken during the progress of the trial to the opinion of the Court, admitting and rejecting evidence; it is only necessary to mention those which gave rise to serious questions of law.

After the plaintiff had given in evidence a certified copy of the record of the indictment, and the finding "*ignoramus*" by the grand jury, he offered the deposition of *Daniel Horn;* to the admission of a part of which, to wit, these words, "As *H. J. Huidekoper* was on his way to Warren as deponent understood by said *Huidekoper*, to prosecute said *James Cotton*, for shooting said *Huidekoper's* horse, said *Huidekoper* told deponent, &c." defendant objected. The objection was sustained, which formed the first bill of exception.

The defendant having given in evidence, by the testimony of *John B. Wallace, Esq.* as follows, "On a hearing before the judge, after *Cotton* was brought, there were divers witnesses examined. I cannot undertake to state the substance of what each witness swore, but I recollect the substance of the testimony—there was no contradiction. *Thomas Irwin, James Irwin, Esq. Joseph Wright, R. J. Coles*, and others were sworn for the Commonwealth. I had taken down notes of the testimony as I do here. I gave those notes to Mr. *Derrickson* as prosecuting attorney."

(James Cotton v. Harm Jan Huidekoper.)

And having given in evidence, by the testimony of *D. Derrickson*, *Esq.* as follows, "I have a faint recollection of having had those notes—I know I have not got them—*Mr. Wallace* has called and asked for them several times." The defendant then offered to prove by the testimony of the same witness, *(Mr. Wallace,)* the *substance* of the whole testimony before *Judge Hackney.* This the plaintiff objected to; but the Court over-ruled the objection and sealed a bill of exception.

The following deposition was also read in evidence:

"Personally appeared before me, *Jesse Moore*, *Esq.* president judge of the sixth judicial district, in the commonwealth of Pennsylvania, *Harm Jan Huidekoper*, who being duly sworn, deposeth and saith, that on Saturday, the sixth day of September, 1823, this deponent was travelling alone on horse-back, from Sugar Grove Village, towards Meadville, along the state road, and that on reaching a bridge, situate about two miles south of Little Brokenstraw creek, it being then about half after ten o'clock in the forenoon, this deponent was fired at with a rifle gun, by some person or persons concealed in the woods, on the left side of the road; by which shot, the horse of this deponent was severely wounded in his left thigh. This deponent further says, that he did not see the person or persons who fired at him, but that it is his firm belief, that the said shot was fired at him wilfully and maliciously, with the intent to kill him this deponent."

The plaintiff requested the Court to charge the jury on the following points:

1. The Court are requested to charge the jury, that if they find, that the defendant made the affidavit given in evidence, without any legal compulsion, with a view to the prosecution of the defendant, whether at the request of any other person or not, and gave that affidavit, to any third person, to make such use of it as he saw proper, he thereby constituted him his agent for that purpose, and he is responsible for all the consequences, whether acting within or without the express authority given him.

2. That if the defendant participated voluntarily in the prosecution of the plaintiff, and it was carried on with his consent, countenance and approbation, he is a partner in the transaction, and liable for the consequences, whether there were others who participated in it or not.

3. Whether the defendant participated in the prosecution of the plaintiff or not, is a fact exclusively for the decision of the jury.

4. The defendant's making the oath as given in evidence, (no matter as respects the right of action, whether at the request and direction of another person or not,) his disclosing the name of the plaintiff, before those who attended to the transaction, propo-

(James Cotton *v.* Harm Jan Huidekoper.)

sed or undertook it, and his going voluntarily before the grand
jury, are circumstances for the consideration of the jury, and from
which they may infer his participation and privity, so as to render
him liable.

To which the Court answered:  Whether the defendant parti-
cipated in the prosecution of the plaintiff or not, is a fact exclu-
sively for the decision of the jury: and this alone is a full answer
to all these points.

The charge was excepted to.

Errors assigned:

1. The Court erred in over-ruling the objection to the evidence
as contained in the first and second bills of exception.

2. The Court did not answer the plaintiff's points, as they
were requested to do.

*Galbreath* and *Barritt* for plaintiff in error.

The deposition offered in evidence should have been received;
for the witness expressed the idea, in language well understood in
the country, "that he understood from *Huidekoper*" that he was
going to Warren to prosecute, &c.  It will not do to construe
depositions according to grammatical rules, but according to the
sense of expressions as generally understood. *Sampson* v. *Samp-
son*, 4 *Serg. & Rawle*, 329.

The Court permitted a witness to testify what was the substance
of the evidence of six or ten witnesses, given before a magistrate,
which was clearly erroneous. 1. Because the witness did not pre-
tend to know what each witness swore.  2. Because it was not
the best evidence in the power of the party.  The witnesses,
the substance of whose testimony was given, all resided within
the jurisdiction of the Court, and might have been produced to
testify again what they had said before.

*John Banks* and *Wallace* for defendant in error.

The defendant does not say that he understood "from *Huide-
koper*.  This deposition was taken without any cross examination
of the defendant: and should therefore be construed, at least ac-
cording to the rules of good English.

Of what importance could it be, to give evidence of what each
witness swore, if the substance of what they all swore was given?
This the witness would have undertaken to testify to: and it estab-
lished beyond all controversy probable cause; which defeated, and
always must defeat the plaintiff's action.

The opinion of the Court was delivered by

Rogers, J.—This is an action on the case, for a malicious pros-
ecution, in indicting the plaintiff without reasonable or probable

cause, for an assault, with an intent to kill and murder. The in-' dictment against *Cotton*, was returned by the grand jury, *ignoramus*, but as no prosecutor was indorsed, it became necessary to prove *aliunde*, that the defendant, *Huidekoper*, was the prosecutor. For this, and other purposes, depositions were taken on notice, for the exclusion of parts of which, errors are assigned. And first, as to the part of the deposition of *David Horn*, which states, "that as *Harm Jan Huidekoper* was on his way to Warren, *as deponent understood, by the said Huidekoper*, to prosecute said *Cotton*, for shooting said *Huidekoper*, said *Huidekoper* told deponent, &c.

This is a common mode of expression; and is, in my opinion, equivalent to saying, "that *Huidekoper* had told him he was on his way to Warren, to prosecute *Cotton*. I agree with *Justice Duncan*, that if depositions taken in the country, were strictly scanned, most of them must be rejected. The words of the witness were not used in their grammatical sense, but in common parlance, and must be construed according to the general understanding, and particularly in the case of depositions taken in the country, before persons unskilled, inapt, and without the aid of counsel. It is common, when it is desired to carry the idea of what you have heard others say, to make use of these expressions: I understood him to say: or, I understood from him, or I understood of him, or as in this case—that as *Harm Jan Huidekoper* was on his way to Warren, as deponent understood, by the said *Huidekoper*, to prosecute said *Cotton*, for shooting said *Huidekoper*, &c. It is not open to the objection, that this understanding of his, may have been derived from the information of others. The witness says, he understood this by the said *Huidekoper;* so that all the knowledge he had of the transaction, and of *Huidekoper's* views in going to Warren, was attained from the defendant himself. It is said the expressions are equivocal; if so, they might have been explained, as the defendant had the opportunity to cross-examine, of which, if he did not choose to avail himself, it was his fault. At any rate, we think the evidence should have been submitted to the jury, and in this there would have been no danger, under proper directions from the Court, as to what attention should be given to the testimony, provided the jury believed that the witness did not hear *Huidekoper* say, he was on his way to Warren to prosecute *Cotton.*

The rejection of *Scott's* deposition, comes within the same principle.

Next we will consider the objection to the testimony of *Messrs. Blossom* and *Wallace.* The furthest the decisions have heretofore gone, is to admit a witness to testify to the substance of what another has sworn on a former trial. It has not been supposed to

(James Cotten *v.* Harm Jan Huidekoper.)

extend so far as to permit proof of the substance of the whole testimony. And even in such cases, the testimony has been received only where the witness is dead, or beyond the reach of process. It appears singular to me that this inferior and secondary proof should have been resorted to, when the witnesses were alive, and subject to the jurisdiction of the Court. The effect is, to deprive the plaintiff of the benefit of a cross-examination, to which we think, he is entitled. There was error, then, in allowing the witness to testify to the substance of the evidence given before *Judge Hackney*. To extend the rule further than has been already done, would be attended with danger. As a general rule, the best evidence must be given, although, at the same time, we do not now say, that none but the witnesses who testified before *Judge Hackney* can be examined; yet we are clearly of the opinion, that the substance of what each witness swore, must be given.

The plaintiff further alleges there was error in not responding distinctly and fully to the first, second, and fourth points submitted to the Court.

I shall confine my attention to the second point, which is most material, and in which, we think, the Court erred. That if the defendant participated voluntarily in the prosecution of the plaintiff, and it was carried on with his counsel, countenance and approbation, he is a partner in the transaction, and liable for the consequences, whether there were others who participated in it or not. This was an important question for the plaintiff, to which he was entitled to an affirmative answer. If he did participate in the prosecution, it is no excuse for him, under the circumstances of this case, to say, that others were equally engaged in conducting the prosecution. If two or more join in a prosecution, without reasonable or probable cause, one and all are answerable in damages. It is joint and several. Besides, even if it were otherwise, the only method by which the defendant could take advantage of the mis-joinder of the others, would be by plea in abatement, in which he would give the plaintiff a better writ. It cannot be permitted, that a wealthy man may indulge his malice by using the name of others, and in this way escape the consequences. If the defendant participated voluntarily in the prosecution, and it was carried on with his approbation and with his counsel, he is liable in damages, whether there were others who were concerned in it or not. This was the substance of the plaintiff's second point, to which I discover no answer.

Judgment reversed and a *venire de novo* awarded.